378 A.2d 359

**COMMONWEALTH of Pennsylvania**

v.

**Pearlie PERDIE, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 6, 1976.

Decided Oct. 6, 1977.

David Zwanetz, Philadelphia, for appellant.

Steven H. Goldblatt and Deborah E. Glass, Assistant District Attorneys, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

Appellant raises two assignments of error on this appeal from his conviction of robbery,[1] two counts of criminal conspiracy[2] and carrying a firearm on a public street.[3] Appellant was sentenced to 6–15 years on the robbery count, 1 to 2 years for carrying a firearm on a public street to run

1. Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 3701 (1973).

2. Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 903 (1973).

3. Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 6108 (1973).

concurrent with the robbery sentence, and 5–10 years on each conspiracy count, each sentence to also run concurrently with the robbery sentence. For the reasons hereinafter set forth, we vacate the judgment of sentence on one of the conspiracy counts.

It appears from the record that early on the evening of July 27, 1975, Claude Taylor, 17, an attendant at an Arco gas station in Philadelphia, was robbed at gunpoint by two men. On August 13, 1975, at approximately 8:00 p. m., Taylor again saw what he thought to be the same two men who had previously robbed him as they were walking past the gas station. After the two men had crossed the street, going away from the gas station, they turned and looked toward the gas station in the direction of Taylor, who was then talking to his girlfriend on the telephone. Taylor then asked his girlfriend to call the police since he was afraid he might be robbed again. Approximately twenty minutes later, having first obtained a description of the two men from Taylor, the police apprehended the appellant and a companion a short distance from the gas station. The appellant was found with a gun. The two suspects were handcuffed and taken back to the gas station, where they were identified by Taylor as the men who had robbed him.

Appellant first argues that the on-the-scene identification that followed his arrest was impermissibly suggestive and therefore should have been excluded from evidence at trial. The details of the challenged identification indicate that the appellant and his companion were brought back to the gas station in a paddy-wagon, and were standing handcuffed in front of the wagon, next to a uniformed police officer. It is upon these facts that the appellant would have us rule that this on-the-scene identification was impermissibly suggestive. We refuse to so hold. The standard for on-the-scene identifications in our Commonwealth was recently stated in *Commonwealth v. Turner*, 454 Pa. 520, 523, 314 A.2d 496, 498 (1974):

"Evidence of identification should not be received at trial if the circumstances of the pretrial confrontation were so infected by suggestiveness as to give rise to an irreparable

likelihood of misidentification (citations omitted). However absent some special elements of unfairness, we do not believe that prompt on-the-scene confrontations fall within this ambit of suggestiveness."

While it is true that the "on-the-scene" identification in this case did not transpire shortly after the actual crime had occurred, as is usually the case,[4] but soon after the victim spotted the suspects he believed robbed him some two weeks earlier, we do not think this factor warrants a different result. The policies and considerations behind the identification in this case are substantially the same as in the usual on-the-scene identifications. Not only is there an inherent reliability in such an immediate identification, but the desire to effectuate the rapid release of a mistaken suspect and to resume the search for the actual offenders is likewise accomplished. *Russell v. United States*, 133 U.S.App.D.C. 77, 408 F.2d 1280, *cert. denied* 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969); *Commonwealth v. Turner*, supra. The special element of unfairness that is required by *Turner* is not present in this case.[5] The facts of this case are remarkably similar to those in *Commonwealth v. Dickerson*, 226 Pa.Super. 425, 313 A.2d 337 (1974), in which our Court, through this writer, held that an on-the-scene identification was not impermissibly suggestive even though the defendant was at

4. *See Commonwealth v. Ray*, 455 Pa. 43, 315 A.2d 634 (1974); *Commonwealth v. Turner*, 454 Pa. 520, 314 A.2d 496 (1974); *Commonwealth v. Simmons*, 239 Pa.Super. 220, 362 A.2d 402 (1976); *Commonwealth v. Jenkins*, 233 Pa.Super. 523, 335 A.2d 463 (1975); *Commonwealth v. Jones*, 231 Pa.Super. 323, 331 A.2d 788 (1974); *Commonwealth v. Santiago*, 229 Pa.Super. 74, 323 A.2d 826 (1974); *Commonwealth v. Manns*, 229 Pa.Super. 21, 323 A.2d 262 (1974).

5. The appellant argues that the gun obtained from the frisk was shown to the victim before he identified the appellant, and therefore, the showing of the gun satisfies the "special element of unfairness" of *Commonwealth v. Turner*, 454 Pa. 520, 314 A.2d 496 (1974). The suppression hearing judge specifically found, however, that the gun was not shown to the victim until *after* the identification had been made. (N.T. Suppression Hearing p. 8). The appellant is therefore bound by this finding. Nevertheless, had the gun been shown to Taylor prior to his identification, it still would not qualify as a special element of unfairness. *See Commonwealth v. Jones*, 231 Pa.Super. 323, 331 A.2d 788 (1974) (dicta).

the time handcuffed and *in* a police wagon. And, as in *Dickerson*, the victim in this case had ample opportunity to observe the appellant during the robbery on July 27, 1975, and immediately identified the appellant when he was returned to the gas station. In sum, there is no special element of unfairness in this case as is necessary to destroy the reliability of the on-the-scene identification. The lower court, therefore did not err in refusing to suppress this evidence.

The appellant also contends that Bill No. 1540, charging criminal conspiracy on August 13, 1975, should not have been permitted to be considered by the jury since there was no evidence to support it.[6]  18 Pa.C.S. § 903 provides in relevant part:

"(a) Definition of conspiracy—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

"(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime  .  .  .."

When determining the sufficiency of the evidence, the standard is whether accepting as true all the Commonwealth's

**6.** It appears from the lower court's opinion and the Commonwealth's brief that the appellant has framed this issue in terms of whether the trial court erred in not sustaining his demurrer to the Commonwealth's evidence. As appellant did not rest following the overruling of his demurrer, but elected to put on a case in defense, the law in our Commonwealth is that the correctness of the ruling on the demurrer is no longer an available issue on appeal. *Commonwealth v. Ilgenfritz*, 466 Pa. 345, 353 A.2d 387 (1976). *Commonwealth v. Spanos*, 167 Pa.Super. 629, 76 A.2d 243 (1950); *but see Commonwealth v. Henderson*, 451 Pa. 452, 304 A.2d 154 (1973). We have chosen, nevertheless, to treat the question as properly framed. The actual post-trial motions that were filed by the appellant are not contained in the record and we therefore have no way of confirming this procedural defect. Furthermore, the lower court notes in its opinion, before its discussion of the merits of the appellant's contention, that the thrust of the appellant's argument on motion in arrest of judgment was to the insufficiency of the evidence on this charge of criminal conspiracy.

evidence and the reasonable inferences therefrom, such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt. *Commonwealth v. Waters,* 463 Pa. 465, 345 A.2d 613 (1975); *Commonwealth v. Ridgely,* 243 Pa.Super. 397, 365 A.2d 1283 (1976). And, it is well-established that a conviction on a charge of criminal conspiracy may be sustained without direct or explicit proof of an unlawful agreement. The conduct of the parties and the circumstances surrounding their activities may support the inference that a conspiracy did exist. *Commonwealth v. Ridgely,* supra; *Commonwealth v. Armbruster,* 225 Pa.Super. 415, 311 A.2d 672 (1973); *Commonwealth v. Rosen,* 141 Pa.Super. 272, 14 A.2d 833 (1940). However, it is equally true that a criminal conviction for conspiracy must be based on more than mere suspicion or conjecture. *Commonwealth v. Roscioli,* 454 Pa. 59, 309 A.2d 396 (1973), and a showing of mere association between or among the co-conspirators is by itself insufficient. *Commonwealth v. Minnich,* 236 Pa.Super. 285, 344 A.2d 525 (1975); *Commonwealth v. Minor,* 227 Pa.Super. 343, 322 A.2d 717 (1974).

In the instant case, the lower court held that sufficient evidence of a conspiracy existed in that the appellant and his companion walked past the gas station on the rainy night of August 13, 1975, threw furtive glances toward the gas station and walked away. The lower court held "this joint walk in the pouring rain near the gas station, armed with the same gun used by the possessor on a previous visit to the gas station was not just an idle stroll but one reeking with criminality." [Lower court opinion at 5.] We disagree with the lower court's assessment of the evidence. The conclusion reached by the lower court is tantamount to speculation and conjecture. The evidence merely proved that the appellant, and his companion while walking past the gas station, looked in the direction of the gas station and walked away. Such evidence is not of the kind that would reasonably and naturally justify an inference of guilt on the part of the appellant and is not of such a volume and quality as to overcome the presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt. *Com-*

*monwealth v. Schwartz,* 210 Pa.Super. 360, 233 A.2d 904, aff'd 432 Pa. 522, 248 A.2d 506, *cert. denied* 398 U.S. 957, 90 S.Ct. 2161, 26 L.Ed.2d 541 (1967); *Commonwealth v. Yobbagy,* 410 Pa. 172, 188 A.2d 750 (1963). The lower court, therefore, erred when it allowed bill No. 1540, charging criminal conspiracy, to be considered by the jury. As a matter of law, the evidence was simply insufficient to overcome the presumption of the appellant's innocence. *Commonwealth v. Bardolph,* 326 Pa. 513, 192 A. 916 (1937).

The judgment of sentence imposed on Bill No. 1540 is therefore reversed, and the verdict of guilty vacated. Having found no other error, the judgments of sentence on Bill No. 1537, charging carrying a firearm on a public street, Bill No. 1539, charging criminal conspiracy, and Bill No. 1541, charging robbery, are affirmed.

HOFFMAN and SPAETH, JJ., concur in the result.