396 A.2d 697

COMMONWEALTH of Pennsylvania

v.

Gary Lee STRADER, Appellant.

Superior Court of Pennsylvania.

Submitted April 10, 1978.

Decided Dec. 29, 1978.

Rex Downie, Jr., Beaver Falls, for appellant.

Robert F. Hawk, Butler, for Com., appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

JACOBS, President Judge:

Appellant Gary Lee Strader appeals to this Court from the order of the Court of Common Pleas of Butler County denying his Post Conviction Hearing Act petition without a hearing.[1] One half of the petition dealt with a judgment of sentence entered after appellant was convicted following a jury trial of terroristic threats, indecent assault, and unlawful restraint. We find no error in the lower court's dismissing this part of the petition without a hearing and, accord-

---

1. The Act of Jan. 25, 1966, P.L. (1965) 1580, § 1 *et seq.*, 19 P.S. § 1180–1 *et seq.* (1978–79 Supp.).

ingly, affirm that part of the order. The other half of appellant's P.C.H.A. petition related to his guilty plea to a charge of rape. Appellant was entitled to a hearing on this aspect of his petition. Therefore, we reverse this part of the lower court's order and remand the case for an evidentiary hearing limited to this issue.[2]

 If a [P.C.H.A.] petition alleges facts that if proven would entitle the petitioner to relief, the court shall grant a hearing which may extend only to the issues raised in the petition or answer. However, the court may deny a hearing if the petitioner's claim is patently frivolous and is without a trace of support either in the record or from other evidence submitted by the petitioner.

The Act of Jan. 25, 1966, P.L. (1965) 1580, § 9, 19 P.S. § 1180–9 (1978–79 Supp.). When a lower court denies a P.C.H.A. petition without a hearing, we will affirm the court's order if upon an examination of the record we also can determine that the claims raised in the petition are patently frivolous. We will remand for an evidentiary hearing on the petition only when it is impossible to tell from the record whether appellant's petition was frivolous and without support. *Commonwealth v. Payton*, 253 Pa.Super. 422, 385 A.2d 410, 412, 414 (1978).

 Appellant's first claim in his P.C.H.A. petition was that trial counsel was ineffective in failing to file a timely motion to suppress identification testimony prior to his trial

---

2. We are compelled to comment upon the briefs prepared by counsel in pursuing this appeal. Appellant's counsel has chosen to ignore one of the fundamental rules of appellate procedure—that is, that in the argument section of the brief, appellant set forth each of his or her arguments separately and each under the separate heading of the question being addressed. Pa.R.A.P. 2118(a). Instead, appellant has chosen to place all of his arguments in one two and one-half page section of his brief, not headed by any statement of the issue or issues to be addressed and not separated in any manner. Counsel for the Commonwealth likewise presents a five page argument, (half of which consists of appellant's guilty plea colloquy), in which he fails to clearly differentiate among the various issues he discusses. Furthermore, the Commonwealth's brief fails to cite any authority for the propositions it sets forth. The briefs submitted by counsel in this case do a disservice to appellant, the Commonwealth, and the judicial system.

on the aforementioned charges.[3] In determining whether appellant was denied the effective assistance of counsel, we must make an independent review of the record, and first decide whether the claim with which the attorney is charged with not pursuing had some reasonable basis. Only if the claim which was foregone was of arguable merit must we inquire into counsel's reasons for not pursuing it. *Commonwealth v. Hubbard*, 472 Pa. 259, 277–78, 372 A.2d 687, 695–96 (1977).

Reviewing the evidence in a light most favorable to the verdict winner,[4] here, the Commonwealth, the facts are as follows: On the evening of May 11, 1976, at approximately 9:30 P.M., Ms. Karen Holden was returning home from work. As she was proceeding north along Route 8 in Butler County, appellant drove up beside her in his car and motioned for her to stop. After they both pulled off the road, appellant, telling her that he had a gun, forced her out of her car and into his. He then requested that she have sexual intercourse with him and commit sodomy upon him. When she refused, he started his car and drove to a nearby cemetery. There, they both got out of his car and he attempted to force her to have sexual relations with him. She screamed and managed to escape, running to a nearby house. Appellant sped off in his car.

Upon arriving at the house, Ms. Holden explained to Mr. Robert Cover what had happened and asked him for help. While Mr. Cover was telephoning the police, a neighbor, Mr. Joseph Shaffer, arrived at the Cover home. Before the police arrived, Ms. Holden described her assailant to Cover and Shaffer as being short and stocky with shoulder length

**3.** Appellant has not waived this issue by failure to raise it earlier. Ineffective assistance of counsel has been held to be an "extraordinary circumstance" justifying a party's failure to raise an issue on direct appeal and allowing that person to proceed by way of a P.C.H.A. petition. *Commonwealth v. Valezquez*, 244 Pa.Super. 327, 330, 368 A.2d 745, 746 (1976).

**4.** *Commonwealth v. Eberle*, 474 Pa. 548, 550, 379 A.2d 90, 91 (1977); *Commonwealth v. Cropper*, 463 Pa. 529, 531, 345 A.2d 645, 646 (1975).

brown hair and sideburns. She said that he was wearing brown plaid pants and was driving a yellow Chevrolet Nova. She repeatedly stated that she could "definitely" identify him and that she would "never forget him." After Officer Lennon of the Middlesex Township Police Department arrived she repeated this description of her assailant and stated that she could positively identify him if she were to see him again.

Officer Lennon then placed Ms. Holden and Messrs. Cover and Shaffer in his police car and drove them to a nearby trailer park. While driving through the park, Ms. Holden and Mr. Shaffer simultaneously saw a yellow Chevrolet Nova. Officer Lennon stopped his car. At about that time, four individuals, appellant, a second man, and two women, emerged from a nearby trailer. According to both Cover and Shaffer, Ms. Holden exclaimed "that's him" as soon as appellant appeared in the trailer doorway. Officer Lennon asked appellant to approach the police car. Appellant did so and when he put his head into the car Ms. Holden positively identified him as her assailant.

Appellant thereafter was charged with terroristic threats, indecent assault, and unlawful restraint. Appellant moved pretrial to suppress Ms. Holden's identification of him because it was the product of an impermissibly suggestive showup. The motion was denied as being untimely. At trial, Ms. Holden identified appellant as her assailant and also testified to her identification of him on the night of May 11, 1976. Appellant was convicted of all three charges. He filed post trial motions which challenged, *inter alia*, the court's denial of his pretrial motion to suppress the identification of him at the trailer park. Appellant withdrew his post trial motions in conjunction with a guilty plea entered to another charge, to be discussed *infra*. No direct appeal was taken following appellant's conviction and sentencing. At all times between appellant's preliminary hearing and the filing of the P.C.H.A. petition, appellant was represented by the same counsel.

We hold that appellant's counsel was not ineffective for failing to file a timely pretrial motion to suppress the identification because such a motion would have been meritless. While it is true that identification evidence should not be admitted at trial if the circumstances of the pretrial confrontation are so infected by suggestiveness as to give rise to an irreparable likelihood of misidentification, "the admission of evidence of a showup without more does not violate due process." *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972). *See also Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967); *Commonwealth v. Turner*, 454 Pa. 520, 523, 314 A.2d 496, 498 (1974). The determinative factor in admitting evidence of a pretrial confrontation is whether, under the totality of the circumstances, the identification was reliable even though the confrontation may have been suggestive. In determining the likelihood of misidentification resulting from a showup, we must evaluate the witness' opportunity to observe the accused at the time of the crime, the witness' degree of attention, the accuracy of the witness' description of the accused prior to the showup, the level of certainty demonstrated by the witness at the time of the confrontation, and the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. at 199, 93 S.Ct. at 382, 34 L.Ed.2d at 411.

In the case before us, Ms. Holden was with her assailant for approximately one-half hour. They spent part of that time in a dark car and part of the time in a moon-lit cemetery. Ms. Holden testified that she could not describe her assailant's face because of the darkness, but she did carefully describe his build, the length and color of his hair, his clothing, and his general appearance to Messrs. Cover and Shaffer and to Officer Lennon. The only discrepancy between Ms. Holden's description of her assailant and appellant's actual appearance was that at one point she described him as being five feet three inches tall and he testified that he is five feet eight inches tall. Upon seeing appellant at his trailer, within one-half hour after her escape from the

assailant, Ms. Holden positively and unequivocally identified appellant as the man who had attacked her. She did so spontaneously as he emerged from the trailer,[5] and again when Officer Lennon had him approach the police car. At no time did anyone suggest to Ms. Holden that appellant was a suspect in the crime.

Based upon the totality of the circumstances in this case, we find that the identification procedure was not so unnecessarily suggestive and conducive to an irreparably mistaken identification as to deny appellant due process of law.[6] Any pretrial motion to suppress this identification testimony would have been without merit, and counsel was not ineffective for failing to make such a motion. Therefore, the lower court did not err in denying this portion of appellant's P.C.H.A. petition without a hearing since appellant's claim is patently frivolous and without a trace of support on the record or through other evidence.

We now turn to appellant's contention that the lower court erred in dismissing without a hearing that part of his P.C.H.A. petition which alleged that his guilty plea to a charge of rape was unlawfully induced.[7] Claims challenging the voluntariness of a guilty plea are to be raised in motions to withdraw the plea made to the trial court. *Commonwealth v. Schwartz*, 251 Pa.Super. 36, 39, 379 A.2d

---

5. We note that appellant emerged from his trailer voluntarily when the police car arrived and that he was not requested to do so by Officer Lennon or anyone else.

6. Following the Commonwealth's presentation of its case in chief, appellant demurred on the basis of the suggestive identification. The trial court overruled the demurrer, thereby further indicating the lack of merit in any pretrial suppression motion appellant might have made on this basis. We also note that the Commonwealth proved by clear and convincing evidence that Ms. Holden's in-court identification of appellant was based on her observation of him the the time of the crime and was not induced by the subsequent pretrial confrontation. *See United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Commonwealth v. Rodgers*, 472 Pa. 435, 372 A.2d 771 (1977).

7. Appellant was charged with the March 4, 1976 rape of June Marie Powers of Saxonburg, Pennsylvania.

319, 321 (1977); *Commonwealth v. Roberts*, 237 Pa.Super. 336, 337, 352 A.2d 140, 141 (1975). We must first determine, then, whether appellant's failure to file a motion to withdraw his guilty plea constitutes a waiver and precludes him from raising the issue in a P.C.H.A. petition. The Act of Jan. 25, 1966, P.L. (1965) 1580, § 4, 19 P.S. § 1180–4(b). We hold that it does not. Appellant's petition alleges, albeit inartfully, that his guilty plea was unlawfully induced due to the ineffective assistance of his counsel. As noted earlier, ineffective assistance of counsel has been held to be an extraordinary circumstance excusing an appellant's failure to follow appropriate procedures in seeking relief for his or her complaints. *Commonwealth v. Valezquez*, 244 Pa.Super. 327, 330, 368 A.2d 745, 746 (1976). Therefore, we will treat appellant's P.C.H.A. petition as if it were a properly presented petition to withdraw his guilty plea.

The petition alleges *inter alia* that appellant's plea was unlawfully induced because counsel failed to conduct an appropriate investigation or prepare an adequate defense to the charge of rape, counsel failed to move to suppress an identification procured in a suggestive manner, and counsel "persistently advised Petitioner that a deal for '3 to 8 was better than 10 to 20' and that he should enter a guilty plea on pragmatic grounds rather than on grounds of innocence or guilt." [8] Upon an examination of the record before us, we cannot say that appellant's claims are patently frivolous or without support on the record. Even though the Commonwealth disputes appellant's allegations and even though appellant stated at his guilty plea colloquy that his plea was not induced by anything other than the sentence agreement and that he was satisfied with the representation he received from his counsel, the record does not clearly refute appellant's claim that his plea was unlawfully induced. *See*

---

8. Appellant pleaded guilty in conjunction with a plea bargaining agreement which provided that he would be sentenced to serve three to eight years in the State Correctional Institution at Rockview, such sentence to run concurrently with the sentence imposed following his conviction for terroristic threats, indecent assault, and unlawful restraint, discussed *supra*.

*Commonwealth v. Knapp*, 212 Pa.Super. 560, 562, 243 A.2d 179, 180 (1968). Our courts have previously determined that in borderline cases petitioners are to be given "every conceivable legitimate benefit in the disposition of their claims for an evidentiary hearing." *Commonwealth v. Nahodil*, 212 Pa.Super. 77, 79, 239 A.2d 840, 840 (1968). *See also Commonwealth v. Laboy*, 460 Pa. 466, 470, 333 A.2d 868, 870 (1975).

Since issues of fact have been raised in appellant's P.C. H.A. petition and since we cannot hold that they are patently frivolous or without support on the record, we reverse the lower court's order dismissing appellant's P.C.H.A. challenge to his guilty plea and remand that part of this case for an evidentiary hearing. If, after the hearing, the lower court determines that appellant's guilty plea to rape was not unlawfully induced, appellant's petition shall be denied. If the court determines that the plea was unlawfully induced, appellant shall be given the opportunity to withdraw the plea and proceed to trial.

■ Appellant also has requested that the hearing on his P.C.H.A. petition be conducted before a different judge. Usually, we find no error in allowing the same judge who presided at a trial or over a guilty plea colloquy to preside at a subsequent P.C.H.A. hearing. In fact, such a procedure is often of benefit to all concerned since the judge is already familiar with the case and may be better able to decide the issues presented. If there is no indication that the interests of justice warrant recusal, we will not order a hearing before a different judge. *Commonwealth v. McKelvey*, 257 Pa.Super. 409, 415, n. 4 390 A.2d 1302, 1305, n. 4 (1978). Unfortunately, this is not such a case.

■ There is no indication on the record that Judge DILLON acted unfairly or improperly at appellant's trial. At the guilty plea proceedings, however, the following exchange took place:

> THE COURT: And you were found guilty of terroristic threats and indecent assault and unlawful restraint, do you understand that?

THE DEFENDANT: Yes.

THE COURT: And the range of sentence on all of those, I don't have to repeat those to you. You were found guilty of those. Do you understand that under our system we have to send you to Rockview. That's the area for any sentence in excess of six months. We do not guarantee that you'll stay there. That's up to the Bureau of Correction, you understand that?

THE DEFENDANT: Yes.

THE COURT: You understand that if the sentence of three to eight years is the sentence three years is when you are eligible for parole?

THE DEFENDANT: Yes.

THE COURT: Eighteen months is when you are eligible for consideration of pre-release status. Do you understand that? Have you talked that over with Mr. Cingolani?

THE DEFENDANT: Yes.

THE COURT: The Judge has that right to veto any pre-release recommendation. We have very little control over your parole, do you understand that?

THE DEFENDANT: Yes.

. . . . .

MR. CINGOLANI: Judge, I think you told me you wouldn't veto any pre-release program that came up with him, for him if he otherwise was a good prisoner.

THE COURT: That's right. I usually go along but I'm telling you now, you put this on the record, you're going to go down there. You're going to get a lot of free advice, and *if you hassle us with post-conviction problems, I veto them.* [Emphasis added.]

Guilty Plea Proceedings, N.T. 9–12.

In fact, Judge DILLON did "veto" appellant's post conviction petition. While we affirmed his action in part, we also reversed his action in part. In light of Judge DILLON'S remarks at the guilty plea proceedings, we find that the interests of justice require us to order that the evidentiary

178

hearing on appellant's P.C.H.A. petition be held before a different judge.

Affirmed in part, reversed in part, and case remanded for proceedings not inconsistent with this opinion.

CERCONE, J., dissents.

HESTER, J., files a dissenting statement.

HOFFMAN, J., did not participate in the consideration or decision of this case.

HESTER, Judge, dissenting:

I dissent.

I would affirm the judgment and sentence of the court below.